UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

KATHLEEN W.[1] )
Plaintiff, )
v. ) No. 1:22-cv-01372-MJD-JRS
KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, )
Defendant. )

**ENTRY ON JUDICIAL REVIEW**

Claimant Kathleen W. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). *See* 42 U.S.C. § 423(d). For the reasons set forth below, the Court **REVERSES** the decision of the Commissioner.

**I. Background**

Claimant applied for DIB in August 2020, alleging an onset of disability as of October 31, 2018. [Dkt. 9-2 at 16.] Claimant's application was denied initially and upon reconsideration, and a hearing was held before Administrative Law Judge Thomas J. Sanzi ("ALJ") on October 7, 2021. *Id.* On October 27, 2021, ALJ Sanzi issued his determination that Claimant was not disabled. *Id.*

[1] In an attempt to protect the privacy interest of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

at 28. The Appeals Council then denied Claimant's request for review on May 18, 2022. *Id.* at 2. Claimant timely filed her Complaint on July 12, 2022, seeking judicial review of the ALJ's decision. [Dkt. 1.]

## II. Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform her past relevant work, but can perform certain other available work, she is not disabled. 20 C.F.R. § 404.1520. Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019).

In reviewing Claimant's appeal, the Court will reverse only "if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950

F.3d 369, 373 (7th Cir. 2020). Thus, an ALJ's decision "will be upheld if supported by substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019).

An ALJ need not address every piece of evidence but must provide a "logical bridge" between the evidence and her conclusions. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). This Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester v.* Berryhill, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's disability determination, the Court must affirm the decision even if "reasonable minds could differ" on whether Claimant is disabled. *Id.*

**III. ALJ Decision**

The ALJ first determined that Claimant had not engaged in substantial gainful activity since the alleged onset date of October 31, 2018. [Dkt. 9-2 at 18.] At step two, the ALJ found that Claimant had the following severe impairments: "degenerative disc disease; diabetes mellitus with neuropathy; pulmonary sarcoidosis; rheumatoid arthritis; osteoarthritis; obesity." *Id.* At step three, the ALJ found that Claimant's impairments did not meet or equal a listed impairment during the relevant time period. *Id.* at 19. The ALJ then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) except that she can frequently operate foot controls with the bilateral lower extremities. The claimant can frequently handle, that is, perform gross manipulation, with the bilateral upper extremities. She can frequently perform overhead reaching with the right upper extremity. The claimant can occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds. She can occasionally balance, stoop, crouch, kneel, and crawl. The claimant should have only frequent exposure to pulmonary irritants such as fumes, odors, dust, and gases. She should avoid all exposure to unprotected heights.

*Id.* at 20.

At step four, the ALJ found that Claimant was able to perform her past relevant work during the relevant time period because such "work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." *Id*. at 27. Accordingly, the ALJ concluded Claimant was not disabled. *Id.* at 28.

**IV. Discussion**

Claimant proffers two main arguments to support her request to reverse the ALJ's decision. First, Claimant argues that the ALJ erroneously applied SSR 16-3p in assessing her subjective symptoms by failing to explain why her statements regarding the intensity, persistence, and limiting effects "are inconsistent with the evidence." [Dkt. 11 at 19.] Second, Claimant argues that in assessing Claimant's residual functional capacity ("RFC"), the ALJ failed to explain why the evidence supported the lack of limitations in hand use. *Id*. at 11.

**A. Subjective Symptoms Issue**

Claimant contends that the ALJ misapplied SSR 16-3p in concluding that the intensity, persistence, and limiting effects of her symptoms are inconsistent with the evidence. *Id*. at 19. First, Claimant contends the ALJ failed to discuss Claimant's self-reported problems with hand use, including grasping and holding items and picking up heavier items. *Id*. at 15. Second, Claimant argues the ALJ erroneously concluded that the evidence was insufficient to support additional exertional or postural limitations by relying on "largely normal gait and strength as well as the lack of indication for surgery." *Id*. at 19. Third, Claimant notes the ALJ did not address Claimant's use of a cane and the need for leg elevation. *Id*. at 21.

In assessing a claimant's subjective symptoms, reviewing courts "may disturb the ALJ's credibility finding only if it is 'patently wrong.'" *Burmester*, 920 F.3d at 510 (quoting *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015)). The reviewing court will find an ALJ's decision to

be "patently wrong" only if it lacks any explanation or support. *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008). If a fully favorable determination cannot be made based solely on the objective medical evidence, SSR 16-3p directs the ALJ to consider (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms, (3) any precipitating and aggravating factors, (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms, (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms, (6) any measures the claimant uses or has used to relieve pain or other symptoms, and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929(c)(3); SSR 16-3p, 2017 WL 5180304, at *3.

At the hearing, Claimant testified that her hands went numb, and she had difficulties lifting heavy items and grasping things; that her hands did not have the strength to perform certain job duties; that she had been using a cane for four years for walks that were over half an hour; and that she had to elevate her legs at nighttime. [Dkt. 9-2 at 45, 47-48.] The ALJ acknowledged the numbness of Claimant's hands, her difficulties grasping things, operating foot controls, and performing work duties, and her use of a cane, but did not mention the leg elevation issue. *Id*. at 21. The ALJ found that Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id*.

As the ALJ noted, since August 2017, Claimant had shown repeated positive straight-leg raising, tenderness to palpation, decreased sensation, and decreased range of motion. *Id*. at 22-

24. Claimant's x-rays and MRIs indicated medial compartment narrowing in her knees and degenerative changes in her wrists and spine. *Id*. While Claimant's gait and strength in the lower extremities were largely normal during this period, several tests after August 2018 showed reduced strength. *Id*. Although Claimant reported improvements in April 2021 after taking Humira, she had to discontinue Humira due to bruising in July 2021. *Id*. at 24. Claimant had undergone multiple epidural steroid injections and a radiofrequency ablation. *Id*. at 22-25.

First, while the ALJ noted Claimant's testimony of her difficulties grasping and lifting items and performing work duties, the ALJ failed to explain how he factored these difficulties into the analysis of the handling and fingering functions. After summarizing Claimant's medical history, the ALJ concluded:

> I considered the objective and clinical evidence, as well as the claimant's many procedures and interventions for back and neck pain, in assessing a residual functional capacity for light work with frequent handling and frequent overhead reaching with the right upper extremity, but only occasional postural activities, and no climbing of ladders, ropes, and scaffolds or exposure to unprotected heights.

*Id*. at 24.

A summary cannot substitute for an analysis. *See Michael v. Saul*, 2021 WL 1811736, at *8 (N.D. Ind. May 6, 2021) ("A summary is not an analysis, as it does not explain why the evidence summarized undermined [Claimant's] statements about [her] symptoms or limitations, or which statements were inconsistent.") (emphasis in original) (citing *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008)). "The ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014).

Here, merely declaring that he had "considered the objective and clinical evidence" cannot demonstrate that the ALJ had indeed considered all relevant evidence, and summarizing Claimant's medical history is not analysis. Besides, the ALJ further concluded that Claimant had no additional limitations based on the improvements in her neuropathy and sarcoidosis as indicated by normal examination results. [Dkt. 9-2 at 25.] However, as noted by Claimant, the ALJ did not discuss Claimant's hand numbness and its effect on her handling and fingering functions, and there is no indication of improvements in her hand numbness. To the contrary, Claimant's examination in August 2021 still indicated decreased sensation. *Id*. at 24. Thus, the ALJ failed to provide a sufficient explanation regarding the rejection of Claimant's self-reported symptoms in her hands.

In addition, the ALJ erroneously relied on the lack of indication for surgery to support his decision that Claimant did not have additional exertional or postural limitations. As the Commissioner contends, the ALJ is entitled to consider the course of a claimant's treatment. 20 C.F.R. § 404.1529(c)(3)(v). Injections, orthotics, and physical therapy are conservative treatments. *Prill v. Kijakazi*, 23 F.4th 738, 749 (7th Cir. 2022). Nevertheless, the ALJ may find that a conservative treatment indicates a less serious condition only if medical evidence indicates that an aggressive treatment might be an option. *Compare Prill*, 23 F.4th at 743 (finding that the ALJ did not err in considering the claimant's conservative treatment and denying disability benefits where the claimant's doctor noted that surgery might be needed in the future), *with Martinez v. Astrue*, 2011 WL 4834252, at *20-21 (N.D. Ind. Oct. 11, 2011) (finding the ALJ impermissibly relied on his own medical determination in concluding that the claimant's treatment was too conservative to support the severity of the condition because no evidence showed a more aggressive treatment would be appropriate). If the reason why the claimant

merely got a prescription for a "conservative" treatment rather than a more aggressive one is unknown, the ALJ cannot diminish the severity of the claimant's condition based on the claimant's taking of the "conservative" treatment. *See Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009) (ruling that the ALJ erred in relying on the claimant's taking of oral medication rather than insulin because why insulin was not prescribed was unknown).

Here, Claimant argues that she had undergone several "not minor procedures," including epidural steroid injections, radiofrequency ablations, medial branch blocks, and facet joint injections. [Dkt. 11 at 20.] However, since medial branch block is a type of injection, except radiofrequency ablations, all other procedures listed are "conservative." While radiofrequency ablation may be more aggressive than injections, it still cannot be compared with open surgery. However, even if assuming all procedures that Claimant had undergone were "conservative," no evidence indicated the reason why Claimant did not have surgery. Many other explanations exist, such as Claimant's inability to undergo surgery due to her other medical conditions or the high risks inherent in the surgery, so the ALJ could not conclude that the low severity of the condition was the reason without further information. Furthermore, no medical evidence suggests surgery could help with Claimant's symptoms. On the contrary, Claimant testified that her doctor told her no other effective options existed because cutting the nerves would not help her much. [Dkt. 9-2 at 46.] Therefore, absent evidence showing that surgery was an option or demonstrating that it was not performed because of the low severity of Claimant's conditions, the lack of indication for surgery does not support the ALJ's conclusion that no additional exertional or postural limitations exist.

Second, Claimant and the Commissioner dispute whether "largely normal gait and strength" could be consistent with functional limitations. The Commissioner contends that all

cases cited by Claimant contain medical source opinions indicating disability, but in this case, no medical evidence supports Claimant's functional limitations. [Dkt. 13 at 8-9.] Claimant asserts that the lack of objective evidence cannot be the sole reason for discounting subjective symptoms. [Dkt. 15 at 4.]

The ALJ noted sixteen examinations related to Claimant's strength or gait from April 2018 to August 2021. [Dkt. 9-2 at 22-24.] Although none indicates abnormal gait and only four tests show reduced strength, almost all tests contain a decreased range of motion, and half have positive straight-leg raising. *Id.* Also, as the ALJ acknowledged, Claimant went to the emergency room twice because of her pain. *Id*. at 22. Nevertheless, the ALJ concluded, "considering the claimant's largely normal gait and strength, … I do not find sufficient evidence for additional exertional or postural limitations." *Id*. at 24. The ALJ did not explain how he factored in these two types of abnormal examination results, suggesting that the ALJ may have cherry-picked evidence rather than confronting the entire record. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). If the assessment of the physical examinations does not reveal the entire story, it constitutes a reversible error. *Andrea B. v. Kijakazi*, 2021 WL 5822301, at *6 (S.D. Ind. Dec. 8, 2021).

In addition, the ALJ may not rely solely on the lack of objective medical evidence to discount a claimant's testimony about her limitations. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). "[T]he ALJ must consider a claimant's subjective complaint of pain if supported by medical signs and findings." *Id*. at 871. Here, Claimant's x-rays and MRIs indicated degenerative changes, and the ALJ concluded that Claimant's medically determinable impairments could cause her symptoms. [Dkt 9-2 at 22, 24.] Thus, the ALJ may not ignore Claimant's self-reported limitations merely because of the lack of medical opinions directly

stating the disability. Therefore, the court disagrees with the Commissioner that the existence of medical opinions suggesting limitations is dispositive simply because some categories of examination results, such as muscle strength and gait, are "largely normal."

Since the lack of medical opinions is not dispositive in deciding a claimant's limitations, the court agrees with Claimant that full muscle strength can be consistent with exertional and postural limitations. *See Arnett v. Saul*, 2021 WL 2394338, at *4 (N.D. Ind. June 11, 2021); *Otis S. v. Saul*, 2019 WL 7669923, at *3 (N.D. Ind. Dec. 19, 2019), *report and recommendation adopted*, 2020 WL 408407 (N.D. Ind. Jan. 24, 2020); *Charles B. v. Saul*, 2019 WL 3557055, at *9 (N.D. Ill. Aug. 1, 2019). The Commissioner asserts that in the cases cited by Claimant, full muscle strength is consistent with limitations only because they contain medical source opinions supportive of the claims of disability. However, if anything, the medical opinions directly stating the limitations demonstrate that doctors agree that functional limitations may exist even though the muscle strength is normal. Therefore, the ALJ provided an insufficient explanation to justify his conclusion that Claimant's normal gait and strength foreclose additional limitations.

Third, the court agrees with Claimant that the ALJ's failure to discuss Claimant's use of a cane is a reversible error. Claimant's use of a cane, "even if a doctor did not recommend it, is not on its own enough to make her testimony regarding her pain unbelievable." *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009). Nevertheless, the ALJ may consider the lack of prescription in light of all evidence. *See id.* If an ALJ does not ignore that the claimant has used a cane and explains how he has factored in the lack of prescription into his assessment, he may rely on it to discredit the claimant. *Compare Thomas v. Colvin*, 534 Fed. Appx. 546, 550 (7th Cir. 2013) (reversing the denial of disability benefits because the ALJ completely ignored the evidence related to the need for a cane), *with Terry D. v. Berryhill*, 2018 WL 5281782, at *3 (S.D. Ind.

Aug. 20, 2018), *report and recommendation adopted sub nom. Davis v. Berryhill*, 2018 WL 4354939 (S.D. Ind. Sept. 12, 2018) (affirming the ALJ's decision because the ALJ expressly used the lack of prescription as a basis to exclude the use of a cane from the RFC). The ALJ acknowledged at one point in his decision that Claimant had been using a cane for four years. [Dkt. 9-2 at 21.] However, the ALJ also stated that Claimant "does not appear to use an assistive device" in his analysis of the Listing and failed to mention anything related to the use of a cane in his RFC discussion. *Id*. at 19-27. Thus, there is no indication that the ALJ adequately considered Claimant's use of a cane.

In conclusion, remand is necessary because the ALJ failed to address Claimant's testimony regarding her hand use difficulties, erroneously relied on the lack of indication for surgery, cherry-picked and misapplied Claimant's examination results, and ignored the use of a cane in his RFC assessment.

**B. Failure to Account for Limitations in RFC Issue**

Claimant contends that the ALJ erred in inadequately explaining the findings in the RFC regarding Claimant's hand-use limitations. [Dkt. 11 at 11.] Specifically, Claimant argues that, despite her testimony at the hearing and medical records demonstrating her symptoms, the ALJ merely provided an impermissible perfunctory and conclusory statement to support his conclusion that Claimant was only limited to frequent handling and that Claimant had no fingering limitations. *Id*. at 12.

"An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton*, 596 F.3d at 425; *see also Terry*, 580 F.3d at 477; *Myles*, 582 F.3d at 678; *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012). "The ALJ must confront the evidence

that does not support her conclusion and explain why that evidence was rejected." *Moore*, 743 F.3d at 1123. Of course, as long as the ALJ has created a "logical bridge" from the evidence to his conclusion, he need not address every snippet of information in the medical records that might contradict the rest of the objective medical evidence. *Pepper v. Colvin*, 712 F.3d 351, 362-63 (7th Cir. 2013). Ultimately, the Court reviews the ALJ's decision deferentially, but cannot uphold a decision if it "fails to mention highly pertinent evidence." *Parker v. Asture*, 597 F.3d 920, 921 (7th Cir. 2010); *see also Garfield v. Schweiker*, 732 F.2d 605, 609-10 (7th Cir. 1984); *Zblewski v. Schweiker*, 732 F.2d 75, 78-79 (7th Cir. 1984); *McNeil v. Califano*, 614 F.2d 142, 144-45 (7th Cir. 1980).

Claimant testified at the hearing that her hands went numb and that she had difficulties lifting heavy things and grasping items, which caused problems in her work because she could not change lenses in glasses or open jars. [Dkt. 9-2 at 45, 47.] The ALJ acknowledged Claimant's testimony about these symptoms. *Id*. at 21. Also, as noted by the ALJ, the medical records indicate that, between December 2019 and August 2021, Claimant regularly reported swelling, tenderness, and decreased sensation in her hands and that Claimant was unable to make complete fists. *Id*. at 21-24. While Claimant reported improvements on Humira in April 2021, three months later, she discontinued Humira because of side effects. *Id*. at 24. In August 2021, Claimant reported tenderness and decreased sensation in her hands again. *Id*.

First, as discussed above, the ALJ could not ignore Claimant's subjective symptoms without adequately articulating the rationale. *See Young v. Secretary of Health & Human Servs.*, 957 F.2d 386, 393 (7th Cir. 1992). When the claimant's symptoms are supported by medical evidence, the ALJ must explain how he reached the conclusion "in a manner sufficient to permit

an informed review." *Herron v. Shalala*, 19 F.3d 329, 333-34 (7th Cir. 1994) (citing *Ray v. Bowen*, 843 F.2d 998 (7th Cir. 1988)).

Here, the ALJ failed to articulate how he had factored in Claimant's alleged difficulties in lifting and grasping items and performing certain working duties and no explanation regarding how "the objective and clinical evidence" discounted Claimant's testimony regarding her hand symptoms. This constitutes a reversible error.

In addition, the court agrees with Claimant that the ALJ failed to provide sufficient explanation to support his finding that Claimant could perform "frequent handling." *Id*. First, as noted above, the ALJ erred in merely relying on Claimant's improvements in diabetes and sarcoidosis to conclude that no additional limitations existed. *Id*. at 25-26. Second, while the opinions from two State agency medical consultants do not contain any handling limitations, they were issued several months before the ALJ's decision. [Dkt. 9-2 at 27.] After the affirmation by the State agency medical consultant, Claimant ceased to take Humira, which had improved her symptoms, because of side effects, and she kept reporting swelling and tenderness in her hands. *Id*. at 24. Thus, the ALJ cannot merely rely on the lack of indications suggesting handling limitations in the State agency medical consultants' opinions to substantiate his finding that Claimant could perform "frequent handling." Third, as acknowledged by the ALJ, the medical records from Claimant's primary care providers contain no direct opinions suggesting that Claimant could perform "frequent handling." *Id*. at 22-24. Instead, the medical records repeatedly show that Claimant was unable to make complete fists and that her hands had decreased sensation, tenderness, and swelling. *Id*. Therefore, the ALJ failed to adequately explain how the medical evidence supported his findings regarding Claimant's handling limitations.

Furthermore, the ALJ erred in providing no discussion about Claimant's fingering function. "'Handling' is defined as 'seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands.'" *Thorson v. Kijakazi*, 2022 WL 593917, at *3 (W.D. Wis. Feb. 28, 2022). "'Fingering' is defined as 'involving picking, pinching, or otherwise working primarily with the fingers.'" *Id.* Thus, a claimant's alleged hand-use difficulties that support handling limitations arguably support fingering limitations as well. *See id.* The ALJ must offer explanations if he treated the two manipulative functions differently. *See Adams v. Saul*, 412 F. Supp. 3d 1024, 1027 (E.D. Wis. 2019).

Here, Claimant's alleged difficulties in changing lenses in glasses and opening jars support both handling and fingering limitations, but the ALJ offered no explanation why he limited Claimant to "frequent" handling but placed no limitations on Claimant's fingering function where the same alleged symptoms showed difficulties using her fingers. This lack of discussion may indicate that the ALJ ignored the evidence supporting fingering limitations. "An ALJ's failure to consider an entire line of evidence falls below the minimal level of articulation required." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). This, too, is a reversible error. *See Adams*, 412 F. Supp. 3d at 1027-29.

In addition, the Court disagrees with Commissioner's contention that the lack of analysis regarding the fingering function does not require remand. [Dkt. 13 at 5.] Commissioner argues that "a decision lacking a seven-part function-by-function written account of the claimant's exertional capacity does not necessarily require remand." *Jeske v. Saul*, 955 F.3d 583, 596 (7th Cir. 2020). However, *Jeske* also stated that to avoid remand, the ALJ's explanation must allow the reviewing court to determine whether the ALJ has "applied the right standards and produced a decision supported by substantial evidence." *Id.* The reviewing court may find that the ALJ

has properly considered a function even without an explicit finding if (1) the claimant has not alleged the limitation, and no record indicates its existence; (2) the ALJ found the claimant's allegation of the limitation not credible, and no record indicates its existence; or (3) the ALJ discussed the evidence and the limitation on another function. *Id*. However, if evidence of a functional limitation exists, and the ALJ fails to assess that limitation, remand may be necessary. *Id*.

Here, as discussed above, Claimant's testimony and her medical records indicated that she might have difficulties performing certain fingering functions, but the ALJ did not offer any explanation why he found Claimant's testimony regarding fingering function not credible or any discussion related to this function in the entire decision. Therefore, the Court lacks sufficient information to confirm that the ALJ properly considered the evidence in support of fingering limitations, making remand unavoidable.

Commissioner also argues that "[w]hen no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error." *Dudley v. Berryhill*, 773 F. App'x 838, 843 (7th Cir. 2019); *see also Best v. Berryhill*, 730 F. App'x 380, 382 (7th Cir. 2018). Thus, Commissioner asserts that since neither Claimant's doctors nor State agency medical consultants offered medical opinions supporting greater manipulative limitations than the ALJ's findings in the RFC, the ALJ made no error. [Dkt. 13 at 7.] That argument was rejected by the Seventh Circuit in *Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015) ("As the Commissioner points out, no doctor has opined that Hill has more limitations than the ALJ incorporated into her assessment of Hill's residual functional capacity. But Hill *testified* that she is more limited, and her testimony cannot be disregarded simply because it is not corroborated by objective medical evidence. *See*

*Hall v. Colvin,* 778 F.3d 688, 691 (7th Cir. 2015); *Pierce v. Colvin,* 739 F.3d 1046, 1049-50 (7th Cir. 2014); *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 883 (9th Cir. 2006)").

Finally, the Court notes that an adequate explanation for Claimant's handling and fingering restrictions is crucial because whether she is limited merely to "frequent handling" or to "occasional handling and fingering" could be dispositive. [Dkt. 9-2 at 53, 55.] The VE testified that an individual limited to occasional handling and fingering would not be able to perform the jobs of medical secretary or unit clerk, which was Claimant's past relevant work. *Id.* at 55.

In conclusion, because the ALJ failed to discuss Claimant's testimony regarding her hand use difficulties that are supported by medical evidence and failed to adequately explain why Claimant is only limited to frequent handling but has no limitations in fingering, remand is necessary.

**V. Conclusion**

For the reasons stated above, the Commissioner's decision is **REVERSED** and **REMANDED for further proceedings consistent with this Order**.

SO ORDERED.

Dated: 2 AUG 2023

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all ECF-registered counsel of record via email generated by the Court's ECF system.